**ZANDRA LAW, PLLC**
Eric S. Tilton (ET 9547), *of counsel*
eric@zandralaw.com
1100 New York Avenue, Ste. A
Huntington Station, NY 11746
(631) 810-1180

*Attorneys for Plaintiffs, the putative FLSA Collective and the Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

No. ____________________

RYAN HOMEM SILVA, JAYTHIO ARRIAGADA, NIWTON CESAR MOREIRA, JR., GABRIEL EMIDIO MENDES, LUCIANO BANHON VIEIRA, JR., and ANTONIO ANDRESSON, *Individually and on Behalf of All Others Similarly Situated*,

Plaintiffs,

-against-

PRO PROPERTY RENO INC, NELSON MAS, and MACARENA MAS, *Jointly and Severally*,

Defendants.

---------------------------------------------------------------------X

**COLLECTIVE & CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiffs Ryan Homem Silva, Jaythio Arriagada, Niwton Cesar Moreira, Jr., Gabriel Emidio Mendes, Luciano Banhon Vieira, Jr., and Antonio Andresson (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class and collective representatives, upon personal knowledge as to themselves and upon information and belief as to all other matters, allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs are former employees of Defendants who performed construction work pursuant to contracts (the "Public Works Contracts") entered into by Defendant Pro Property Reno

Inc ("PPR") with the City of New York's New York City Housing Authority ("NYCHA"). Plaintiffs Homem, Mendes, Moreira, Vieira, and Andresson also performed construction work for Defendants on other construction projects in the States of New Jersey, Delaware, and Pennsylvania.

2. Throughout the relevant time period, Plaintiffs were not paid the applicable prevailing rate of wages or supplemental benefits for all hours that they worked performing construction work within the City of New York pursuant to the Public Works Contracts.

3. Further, Plaintiffs were not paid wages of any kind for all time spent at the start and end of each shift pursuant to Defendants' policy that they would only pay workers for working from 8:00 a.m. to 4:30 p.m. despite written instruction from Defendants that workers had to arrive at work at 6:45 a.m. or 7:00 or 7:30 a.m. depending on the project, and remain working until they completed their tasks for the day, which required workers to work "off the clock" for an additional 30 minutes to two hours per day, resulting in significant unpaid regular and overtime wages each week anywhere between one and two hours per day, or five to ten hours per week.

4. Further, Defendants would routinely misclassify Plaintiffs under the applicable prevailing wage schedules in order to deprive them of the benefit of higher wage rates during certain periods of their employment.

5. Plaintiffs bring this action to recover unpaid overtime premium pay owed to them pursuant to both the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 190 *et seq.* and §§ 650 *et seq.*

6. Plaintiffs bring their FLSA claims on behalf of themselves and a collective of all other similarly situated employees of Defendants working in the states of New York, New Jersey,

Pennsylvania, and Delaware pursuant to 29 U.S.C. § 216(b) within the three-year period prior to the date of filing of this action.

7. Plaintiffs bring their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 ("Rule 23") class of all employees who worked for Defendants performing construction work within the City of New York pursuant to the Public Works Contracts during the six-year period prior to the date of filing of this action.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it arises under the FLSA, a federal statute.

9. This Court also has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because: (1) there are more than 100 members in the proposed class; (2) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (3) at least one member of the proposed class is a citizen of a state different from at least one defendant. Plaintiff Arriagada is a citizen of New York. Defendant PPR is a corporation incorporated in New Jersey with its principal place of business in New Jersey, and is therefore a citizen of that state. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

10. This Court also has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367.

11. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

13. The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

14. On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolled for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or procedural rules. The 30-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional 30 days through June 6, 2020. On June 6, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional 30 days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of 228 days.

## **THE PARTIES**

**Plaintiffs:**

15. Plaintiff Ryan Homem Silva was, at all relevant times, an adult individual residing in Union County, New Jersey.

16. Plaintiff Jaythio Arriagada was, at all relevant times, an adult individual residing in Queens County, New York.

17. Plaintiff Niwton Cesar Moreira, Jr. was, at all relevant times, an adult individual residing in Hudson County, New Jersey.

18. Plaintiff Gabriel Emidio Mendes was, at all relevant times, an adult individual residing in Union County, New Jersey.

19. Plaintiff Luciano Banhon Vieira, Jr. was, at all relevant times, an adult individual residing in Hudson County, New Jersey.

20. Plaintiff Antonio Andresson was, at all relevant times, an adult individual residing in Union County, New Jersey.

21. At all relevant times, Plaintiffs performed work for Defendants in the various boroughs of the City of New York, Somers Point, NJ, Darby, PA, and others.

22. At all relevant times, the members of the purported FLSA Collective performed work for Defendants in the various boroughs of the City of New York, State of New Jersey, State of Delaware, and State of Pennsylvania.

23. At all relevant times, the members of the purported NYLL Class performed work for the Defendants in the various boroughs of the City of New York.

24. The construction work that Plaintiffs and Defendants' other employees performed for Defendants in New York City included the renovation or demolition and rebuilding of numerous apartment buildings operated by NYCHA.

25. At all relevant times, Plaintiffs and the purported FLSA Collective and NYLL Class were employed by Defendants within the meaning of the FLSA and NYLL in that Defendants suffered or permitted them to work.

26. Plaintiffs consent in writing to be party to this action pursuant to 29 U.S.C. § 216(b) and their individual consent forms are attached hereto.

**Defendants:**

27. Defendant PPR is an active New Jersey Corporation registered with the New Jersey Department of State on September 2, 2015, with its principal place of business located at 428 Tompkins St., Orange, NJ 07050-1339.

28. At all relevant times, Defendant PPR has been and continues to be an enterprise covered by the FLSA because it has at least two employees and gross revenues in excess of $500,000.00.

29. At all relevant times, Defendant PPR employed Plaintiffs and others to perform work in interstate commerce and/or the production of goods or services in interstate commerce in that it employed Plaintiffs and others in the States of New York, New Jersey, Delaware, and Pennsylvania who handled and otherwise moved goods in interstate commerce.

30. Upon information and belief, Defendant Nelson Mas ("Nelson") is President and Chief Executive Officer and one of the ten largest shareholders of Defendant PPR who established the company's payroll policies, including the unlawful practices complained of herein.

31. Upon information and belief, Defendant Macarena Mas ("Macarena") is an officer, director, and one of the ten largest shareholders of Defendant PPR who established the company's payroll policies, including the unlawful practices complained of herein.

32. Defendant PPR and Defendants Nelson and Macarena are joint employers of Plaintiffs and the putative FLSA Collective and NYLL Class.

33. Defendants Nelson and Macarena participated in the day-to-day operations of Defendant PPR and acted intentionally in their direction and control of Plaintiffs and Defendant PPR's other similarly situated employees as they were responsible for hiring, disciplining, and firing employees, including Plaintiffs, set the rate and methods of payment for all employees, controlled their work schedules, and gave direction to the employees throughout the day, and are therefore both an "employer" pursuant to the 29 U.S.C. § 203(d) and regulations issued thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2 and regulations issued thereunder, and are jointly and severally liable with Defendant PPR.

## FLSA COLLECTIVE ACTION ALLEGATIONS

34. Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs Homem, Moreira, Mendes, Vieira, and Andresson (the "Representative Plaintiffs") bring the First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All non-exempt persons employed by Defendants at any time following the date that is three years prior to the filing of the Complaint in this action through the entry of judgment in this case (the "Collective Action Period") who performed construction work for Pro Property Reno Inc in the States of New York, New Jersey, and Pennsylvania (the "Collective Action Members").

35. A collective action is appropriate in this circumstance because the Representative Plaintiffs and the Collective Action Members are similarly situated in that they were all subjected to Defendants' illegal policy of failing to pay any wages for a substantial number of work hours each week, let alone proper overtime pay for work performed in excess of forty (40) hours each week. As a result of this policy, the Representative Plaintiffs and the Collective Action Members did not receive legally-required overtime pay for all hours worked in excess of forty (40) hours per week.

36. The Representative Plaintiffs and the Collective Action Members have substantially similar job duties and were paid pursuant to a similar, if not the same, payment structure.

**NYLL CLASS ACTION ALLEGATIONS**

37. Pursuant to the NYLL, Plaintiffs bring their Second through Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All non-exempt persons employed by Defendants at any time following the date that is six years and two hundred twenty-eight days prior to the filing of the Complaint in this action through the entry of judgment in this case (the "Class Period") who performed construction work for Pro Property Reno Inc in the City of New York pursuant to the Public Works Contracts (the "Class Members").

38. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by any means permissible under the Federal Rules of Civil Procedure.

39. The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are as many as two hundred (200), or more, Class Members.

40. Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

    a. Whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b. Whether Defendants failed to keep true and accurate time records of all hours worked by Plaintiffs and the Class Members;

c. Whether Defendants failed and/or refused to pay Plaintiffs and the Class Members wages for all hours worked pursuant to the Public Works Contracts;

d. Whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime wages for all hours worked over forty (40) in a given week;

e. Whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

f. Whether Defendant PPR breached its contract(s) with the City of New York and/or state and city public entities by failing to pay Plaintiffs and the Class Members, who are third-party beneficiaries of such contracts, at the applicable prevailing wage rates for all hours worked;

g. Whether Defendants failed and/or refused to pay Plaintiffs and the Class Members the prevailing wage overtime premiums for work performed in excess of eight (8) hours per day and/or forty (40) hours per week;

h. Whether Defendants failed and/or refused to pay Plaintiffs and the Class Members at the proper prevailing wage rate appropriate to their job title and responsibilities while performing work pursuant to the Public Works Contracts; and,

i. Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, statutory damages, interest, costs and disbursements, and attorneys' fees.

41. Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, were employed by Defendants as construction workers and subjected to

Defendants' corporate wage and payroll policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid wages for all hours worked each day including overtime premiums for hours worked over 40 in a given workweek, not paid prevailing wages, supplemental benefits and/or daily/weekly overtime prevailing wages for all work performed pursuant to PPR's Public Works Contracts with New York State municipalities and agencies, including the City of New York and NYCHA. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

42. Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all current and former employees of Defendants, not merely out of a desire to recover their own damages.

43. Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

44. A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

45. Defendants are sophisticated parties with substantial resources. The Plaintiffs and Class Members lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

46. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Company and Individual Liability**

47. Defendant PPR is a New Jersey corporation in the business of providing construction, demolition, and renovation services operating from its main office located at 428 Tompkins St., Orange, NJ 07050-1339.

48. Upon information and belief, Defendants have vast experience in providing their services to local governments and municipalities.

49. At all relevant times, the Individual Defendants have been in charge of the day-to-day operations of PPR including, among other things, hiring and firing employees, setting the schedules and wage rates of employees, arranging and hosting employee meetings to address updates and concerns related to the work performed by Plaintiffs and Collective Action Members and Class Members pursuant to the contracts in questions, including with respect to the payment of prevailing wages and supplementary benefits and the wages actually received by Plaintiffs and Defendants' other employees.

50. The Individual Defendants handled the operations of PPR and gave direction to supervisors, Plaintiffs, the Collective Action Members, and the Class Members to ensure that the work in the field was being conducted in accordance with their policies and procedures, including making determinations as to when, where, and for how long their employees worked on the job sites they were assigned to.

51. For example, Defendant Nelson would routinely relay directives and instructions to the employees through Defendant Macarena utilizing the WhatsApp group messaging platform in which Defendants and Plaintiffs, and the Collective Action Members and the Class Members participated in group chat sessions regarding their projects, as follows:

a. February 19, 2023: "Antonio; please call Nelson for instructions on how to proceed with the scope";

b. August 16, 2024: "anti tips have to be installed day of kitchen BLUE TEAM as per Nelson!";

c. May 28, 2024: "As per Nelson's Directions . . . .";

d. April 17, 2025: "They will be removed from a schedules as per Nelson. Thanks."

e. January 10, 2024: "Just got off the phone with Nelson; picked up few new Jobs";

f. January 19, 2023: "waiting on meeting with Nelson tomorrow" before production decisions were issued;

g. July 15, 2024: "Guys stop texting me with issues with pay! You can reach out to Nelson!"; and,

h. September 25, 2024: "Guys everyone! NO exceptions as per Nelson! Must wear PPR Vest with our logo."

52. In the same group chats, Defendant Macarena would routinely direct and instruct the work of Plaintiffs, the Collective Action Members, and the Class Members by telling them when and where to work each day, reminding them to clock in and clock out according to certain policies, send work schedules, and schedule employee meetings.

**The Public Works Contracts**

53. Throughout the Collective Action Period and the Class Period, Defendant PPR was awarded numerous contracts to renovate, demolish, and rebuild large residential apartment buildings in the City of New York, and elsewhere, that are owned and operated by NYCHA.

54. By way of example only, Plaintiff Homem worked at various job sites located on Park Avenue, in Manhattanville, in Harlem (known as the Grampion project), Washington Heights, known as the ABM (Audubon, Bethune, Marshall) project, and Brooklyn.

55. Upon information and belief, the Public Works Contracts are still in effect as of the date of this filing.

56. As NYCHA is partially funded by the United States government, the Public Works Contracts obligated Defendant PPR to pay Plaintiffs and the Collective Action Members and the Class Members at or above local prevailing wages rates, including any required supplemental benefits, in accordance with the Davis-Bacon Act, 40 U.S.C. §§ 3141, *et seq.* and/or Article 8 of the NYLL §§ 220 *et seq.*

57. As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("Prevailing Wage Schedules") to be paid to the Plaintiffs and Collective Action Members and Class Members should have been annexed to and formed a part of the Public Works Contract. If not annexed to the Public Works Contract, these schedules were expressly or impliedly incorporated into the contract as a matter of law and/or public policy.

58. As employees of Defendants who were assigned to perform construction work for Defendant PPR pursuant to the Public Works Contracts, Plaintiffs and the Collective Action Members and the Class Members are intended third-party beneficiaries of Defendant PPR's Public Works Contracts.

59. Plaintiffs and the Class Members should have been paid the prevailing wage rates, including supplemental benefits, pursuant to the Davis-Bacon Act Wage Determinations ("WD") NY20190003; NY20200003, NY20210003, NY20220003, NY20230003,

NY20240003, NY20250003, NY20260003, as modified, and/or the New York State Department of Labor Article 8 Prevailing Wage Schedules for the counties of New York, Queens, Kings, Bronx, Richmond, and any others applicable to Defendant PPR's Public Works Contracts.

60. Upon information and belief, employees, such as Plaintiffs, performing work as "Carpenters" pursuant to the Public Works Contracts were entitled to be paid the following rates during the relevant time period:

   a. October 25, 2019 through March 19, 2020: $52.50; plus $45.58 in supplemental benefits per hour;

   b. March 20, 2020 through July 2, 2020: $53.50; plus $44.64 in supplemental benefits per hour;

   c. July 3, 2020 through July 22, 2021: $54.00; plus $46.18 in supplemental benefits per hour;

   d. July 23, 2021 through February 3, 2023: $54.75; plus $46.43 in supplemental benefits per hour;

   e. February 4, 2023 through January 18, 2024: $55.05; plus $47.83 in supplemental benefits per hour;

   f. January 19, 2024 through December 5, 2024: $55.05; plus $47.88 in supplemental benefits per hour;

   g. December 6, 2024 through July 31, 2025: $57.05; plus $48.33 in supplemental benefits per hour; and,

   h. August 1, 2025 through the filing of this Complaint: $59.05; plus $48.08 in supplemental benefits per hour.

61. Upon information and belief, employees performing work as "Demolition Laborers (Interior)" pursuant to the Public Works Contracts were entitled to be paid the following rates during the relevant time period:

    a. October 25, 2019 through March 7, 2024: Tier A: $37.44; plus $23.60 in supplemental benefits per hour; Tier B: $26.63, plus $17.57 in supplemental benefits per hour;

    b. March 8, 2024 through July 4, 2024: Tier A: $39.70; plus $24.44 in supplemental benefits per hour; Tier B: $28.89, plus $18.86 in supplemental benefits per hour;

    c. July 5, 2024 through August 22, 2024: Tier A: $42.23; plus $28.07 in supplemental benefits per hour; Tier B: $30.81, plus $21.28 in supplemental benefits per hour;

    d. August 23, 2024 through October 31, 2024: Tier A: $42.48; plus $28.82 in supplemental benefits per hour; Tier B: $31.06, plus $21.92 in supplemental benefits per hour;

    e. November 1, 2024 through July 24, 2025: Tier A: $39.70; plus $24.44 in supplemental benefits per hour; Tier B: $28.89, plus $18.86 in supplemental benefits per hour; and,

    f. July 25, 2025 through the filing of this Complaint: Tier A: $40.22; plus $25.17 in supplemental benefits per hour; Tier B: $29.29, plus $20.29 in supplemental benefits per hour.

62. Demolition Laborers (Interior) Tier A are "[r]esponsible for the removal of all interior petitions and structural petitions that can consist of sheet rock, block or masonry. Also, all structural slab openings for ducts, mechanical, shafts, elevators, slab openings and exterior walls where the building is not completely demolished."

63. Demolition Laborers (Interior) Tier B are "[r]esponsible for shoveling of debris into containers, pushing containers from the inside to the outside of the building."

64. Upon information and belief, employees, such as Plaintiffs, performing work as "Tile Layers" pursuant to the Public Works Contracts were entitled to be paid the following prevailing wage rates during the relevant time period:

   a. October 25, 2019 through December 31, 2020: $51.40; plus $27.81 in supplemental benefits per hour;

   b. January 1, 2021 through January 6, 2022: $59.73; plus $35.37 in supplemental benefits per hour;

   c. January 7, 2022 through June 29, 2023: $61.84; plus $36.04 in supplemental benefits per hour;

   d. June 30, 2023 through January 2, 2025: $63.04; plus $36.30 in supplemental benefits per hour;

   e. January 3, 2025 through May 25, 2026: $63.98; plus $36.82 in supplemental benefits per hour;

   f. May 26, 2026 through the filing of this Complaint: $64.40; plus $37.13 in supplemental benefits per hour.

65. Additionally, Defendants employed Collective Action Members and Class Members in the positions of asbestos workers, hazardous material handlers, bricklayers, pointers, cleaners, caulkers, masons, plumbers, painters, tile finishers, electricians, elevator mechanics, ironworkers, cement and concrete workers, plasterers, roofers, and other categories of laborers subject to their own rates of pay under the Prevailing Wage Schedules.

66. Based upon the daily work schedules posted to the employees in the group messaging platform, WhatsApp, Defendant Macarena characterized the workers into the Red Team, Blue Team, Paint Crew, Laborers, and an "Off" List. For example, on a typical production day in 2025, each schedule accounts for 50-80 or more Collective Action Members and Class Members between the active and off groups. The "Off" lists alone on any given day often contain 10-20 names, meaning the total roster of Collective Action Members and Class Members was large enough that rotating workers off was routine.

67. In total, across multiple job sites, after excluding supervisory personnel, there were roughly 150-200 Collective Action Members and Class Members who participated in the WhatsApp discussions who worked pursuant to the Public Works Contracts and who were subject to the scheduling instructions discussed below. Moreover, this figure only includes Collective Action Members and Class Members who participated in group chats where Plaintiffs were also participants, and does not include any Collective Action Members and Class Members who may have participated in other group chats to which Plaintiffs were not privy. It also excludes numerous workers who may have no longer worked for Defendants at the particular time of any of the group chats utilized by Defendants.

68. Upon information and belief, between former, current, and future employees of Defendants, there are more than 200 potential Collective Action Members and Class Members who were paid, or should have been paid, pursuant to the Prevailing Wage Schedules.

69. Upon information and belief, Defendant PPR was compensated by the City of New York, NYCHA, or a General Contractor to provide demolition, renovation and rebuilding work at the prevailing wage rates for all workers in all categories for work performed pursuant

to the Public Works Contracts, including Plaintiffs and the Collective Action Members and the Class Members.

**Work Direction Given to Plaintiffs Resulting in Time Sheet Manipulation**

70. As set forth above, as a result of Defendants performing work on multiple Public Works Projects at any one time, Plaintiffs, the Collective Action Members, and Class Members were all in various group chats through the WhatsApp messaging application in which Defendant Macarena would regularly instruct employees on where, and when, they would report to work, and in what roles they would be performing said work.

71. For purposes of timekeeping and payroll, Defendants would only pay their workers, including Plaintiffs, the Collective Action Members, and the Class Members, for a maximum of 40 hours of work per week, from 8:00 a.m. to 4:30 p.m., with a 30-minute lunch break, five days per week, and would submit certified payroll reports indicating as much, which were false in all material respects.

72. In reality, Defendant Macarena would regularly instruct employees through the WhatsApp group chats, including Plaintiffs, the Collective Action Members, and the Class Members, to report to work at either 6:30 a.m., 7:00 a.m. or 7:30 a.m. depending on the project in order to attend meetings, prepare their working gear, and begin working prior to the time that they clocked in at 8:00 a.m. for purposes of payroll.

73. On December 1, 2022, Defendant Macarena instructed employees as follows: "everyone is to be on-site at 7:30, ready with tools, signed in . . To walk into apartments at 8:00am," yet Defendants did not begin compensating Plaintiffs, the Collective Action Members, and the Class Members until 8:00 a.m.

74. On November 22, 2022, Defendant Macarena instructed employees as follows: "Tomorrow we meet at 7:30; to sign in," and "Everyone be there at 7:30 . . . to go over some things," yet Defendants did not begin compensating Plaintiffs, the Collective Action Members, and the Class Members until 8:00 a.m.

75. On November 28, 2022, Defendant Macarena wrote: "Bathroom crew your [sic] on tomorrow! Arrive on-site early! Parking is an issue; and I have zero [tolerance] for 'I'm late due to parking' I am always e[a]rly; for that same reason! Tomorrow we meet at 7:30 . . . ," yet Defendants did not begin compensating Plaintiffs, the Collective Action Members, and the Class Members until 8:00 a.m.

76. Also on November 28, 2022, Defendant Macarena wrote: "I will repeat! Get there early parking is an issue[.] when I mean early I mean early! No late excused! [sic] Everyone be there by 7:30; truck latest 7:45 [emoji omitted] please plan accordingly traffic has been heavy in am! 7:30 we All! Meet at 529-1B on W133 street to go over some things! Thanks," yet Defendants did not begin compensating Plaintiffs, the Collective Action Members, and the Class Members until 8:00 a.m.

77. On November 30, 2022, Defendant Macarena instructed employees as follows: "be on site by 7:30 . . . walk out with finish product at 4:30 every single day," constituting a uniform, standing instruction to Plaintiffs, the Collective Action Members, and the Class members, yet Defendants did not begin compensating Plaintiffs, the Collective Action Members, and the Class Members until 8:00 a.m.

78. These types of instructions continued over the entire relevant period. For example, on July 30, 2025, on the eve of a new job site, Defendant Macarena wrote: "Let's meet early to have a morning meeting, at 7:00am! Go over some guidelines to start working at 8:00am!

Nelson and myself will be onsite to assist Chris on his first day, and make sure we have a smooth start of a job!," yet Defendants did not begin compensating Plaintiffs, the Collective Action Members, and the Class Members until 8:00 a.m.

79. Beginning approximately August 26, 2025, the following boilerplate instruction was appended to each day's work schedule posted in the WhatsApp group chat, appearing verbatim at least 15 consecutive daily schedules through at least September 19, 2025: "EVERY ONE ON SITE AT 7:00 AM FOR SIGN IN, TEAM MEETING 7:15 EVERYDAY [emojis omitted] BEFORE DAY START 7:30."

80. Similarly, Defendants required employees, including Plaintiffs, the Collective Action Members, and the Class Members to clock out at 4:30 p.m., but continue working in order to complete any assigned tasks for the day, such that they would be working as much as 30 minutes or one hour after they had officially clocked out for the day.

81. Beginning in or about April 2024, Defendants began requiring Plaintiffs, the Collective Action Members, and the Class Members to clock in and clock out using a new timekeeping system known as SmartBarrel. Plaintiffs, the Collective Action Members, and the Class Members utilized SmartBarrel to clock in and clock out according to their *actual* working time, yet the daily time sheets kept at the job site upon which Defendants relied for payroll continued to show that the workers were only being paid from 8:00 a.m. to 4:30 p.m.

82. On August 7, 2024, Defendant Macarena admitted to Plaintiff Homem that Defendants do not pay employees based upon their actual working time, but instead pay according to the false on-site sign in sheets. When Plaintiff Homem expressed a concern to Defendant Macarena that he had set up the SmartBarrell application correctly but was unable to log his hours for a particular day in the workweek, Defendant Macarena responded as follows:

"We don't pay based upon application we pay base[d] on paper, did you sign in on paper every time?"

83. As a result of these unlawful workplace directives and Defendants' failure to pay their employees based upon their actual working time, Plaintiffs, the Collective Action Members, and the Class Members worked anywhere between 42.5 and 50 hours per week depending on the project, but were only paid for, at most, 40 hours of work per week and 8 hours in a single day.

84. As any work beyond 40 hours in the workweek should have been paid to Plaintiffs, the Collective Action Members, and the Class Members at an overtime rate of pay of one-and-one-half their regular rate of pay, Defendants have deprived the Plaintiffs, the Collective Action Members, and the Class Members of a significant amount of compensation in every week of their employment.

**<u>Plaintiffs' Work for Defendants</u>**

85. Plaintiff Homem worked for Defendants performing work as a Carpenter/Framer from in or around August 2022 through in or around October 2025.

    a. Plaintiff Homem worked for Defendants on projects on Park Avenue and in Manhattanville from in or around August 2022 through in or around January 2023, from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 45 hours per week, despite being paid for, at most, 40 hours per week;

    b. Plaintiff Homem worked for Defendants on a project in Harlem known as Grampion from in or around January 2023 through in or around March 2023, from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 45 hours per week, despite being paid for, at most, 40 hours per week;

c. Plaintiff Homem worked for Defendants on a project in Somers Point, NJ from in or around March 2023 through in or around July 2023, from 6:45 a.m. to 3:30 p.m., with a 30-minute meal break, for a total of 41.25 hours per week, despite being paid for, at most, 40 hours per week;

d. Plaintiff Homem worked for Defendants on a project in Washington Heights known as the ABM (Audubon, Bethune, Marshall) project from in or around July 2023 through in or around February 2024, from 7:00 a.m. to 5:00 p.m., with a 30-minute meal break, for a total of 47.5 hours per week, despite being paid for, at most, 40 hours per week;

e. Plaintiff Homem worked for Defendants on a project in Brooklyn from in or around February 2024 through in or around March 2024, from 8:00 a.m. to 3:30 p.m., with a 30-minute meal break, for a total of 40 hours per week;

f. Plaintiff Homem worked for Defendants on a project in Delaware from in or around March 2024 through in or around April 2024, from 7:30 a.m. to 5:00 p.m., with a 30-minute meal break, for a total of 45 hours per week, despite being paid for, at most, 40 hours per week;

g. Plaintiff Homem worked for Defendants on multiple projects in Brooklyn, NY from in or about June 2024 through September 2024, from 7:30 a.m. to 5:00 p.m., with a 30-minute lunch break, for a total of 45 hours per week, despite being paid for, at most, 40 hours per week.

h. Plaintiff Homem worked for Defendants on projects on Pacific Street in Brooklyn and Park Place in Brooklyn from in or about February 2025 through March 2025,

from 7:00 a.m. to 5:00 p.m., with a 30-minute lunch break, for a total of 47.5 hours per week, despite being paid for, at most, 40 hours per week.

i. Plaintiff Homem worked for Defendants on a project in Woodbury, NJ known as the Woodlake Apartments from in or about March 2025 through in or about April 2025 from 6:45 a.m. to 5:00 p.m., with a 30-minute lunch break, for a total of 50 hours per week, despite being paid for, at most, 40 hours per week.

j. Plaintiff Homem worked for Defendants on a project in Darby, PA from in or around April 2025 through in or around October 2025, from 7:00 a.m. to 3:30 p.m. with a 30 minute meal break, for a total of 40 hours per week.

86. Plaintiff Arriagada worked for Defendants performing work as Laborer from in or around April 2022 through May 21, 2023.

a. Plaintiff Arriagada worked for Defendants on projects on Park Avenue and in Manhattanville from April 2022 through in or around January 2023, from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week.

b. Plaintiff Arriagada worked for Defendants on the WH-3 project throughout February 2023, from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week;

c. Plaintiff Arriagada worked for Defendants on a project in Harlem known as Grampion from in or around March 2023 through in or around April 2023, from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week;

d. Plaintiff Arriagada worked for Defendants on the WH-3 project from in or around May 2023 through the end of his employment on May 21, 2023, from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week.

87. Plaintiff Moreira worked for Defendants performing work as either a Carpenter or a Laborer from in or about October 2024, through August 8, 2026.

a. Plaintiff Moreira worked as a Carpenter/Laborer for Defendants on the Park Place, Sterling House, and Fenimore projects in Brooklyn, NY from October 24, 2024 though March 12, 2025 from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week;

b. Plaintiff Moreira worked as a Laborer for Defendants on the Tapscott project in Brooklyn, NY from December 23, 2024, through December 29, 2024 from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week;

c. Plaintiff Moreira worked as a Carpenter/Laborer for Defendants on the Reid Towers project from March 20, 2025 through June 17, 2025 from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week;

d. Plaintiff Moreira worked as a Laborer for Defendants on a project in Staten Island, NY from August 29, 2025 through December 21, 2025, from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week;

e. Plaintiff Moreira worked as a Laborer for Defendants on a project on Malcom X Blvd. in Brooklyn, NY from December 22, 2025 through August 8, 2026, from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week.

88. Plaintiff Mendes worked for Defendants performing work as a Laborer from in or about December 2022 through in or about May 2025.

a. Plaintiff Mendes worked for Defendants on the Manhattanville project from in or about December 2022 to in or about February 2023 from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week;

b. Plaintiff Mendes worked for Defendants on the Grampion project from in or about January 2023 to in or about March 2023 from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week;

c. Plaintiff Mendes worked for Defendants on the Washington Heights ABM project from in or about July 2023 to in or about March 2024 from 7:00 a.m. to either 4:30 or 5:00 p.m., with a 30-minute lunch break, for a total of between 45 and 47.5 hours per week, despite being paid for, at most, 40 hours per week;

d. Plaintiff Mendes worked for Defendants on projects in Brooklyn, NY from in or about April 2024 to in or about May 2025 from either 7:00 a.m. or 7:30 a.m. to 4:30 p.m. or 5:00 p.m., with a 30-minute lunch break, for a total of between 42.5 and 47.5 hours per week, despite being paid for, at most, 40 hours per week.

89. Plaintiff Vieira worked for Defendants performing work as a Laborer and Carpenter from in or about December 2022 through in or about August 2025.

a. Plaintiff Vieira worked for Defendants on the Park Avenue, Manhattanville, and WH-3 projects from in or around December 2022 to in or around March 2023 from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week;

b. Plaintiff Vieira worked for Defendants on the Grampion project from March 8, 2023 through in or about April 2023, from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week;

c. Plaintiff Vieira worked for Defendants on the Manhattanville project from in or about April 2023 to in or about May 2023 from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week;

d. Plaintiff Vieira worked for Defendants on the ABM project from in or about August 2023 to in or about October 2024 from 7:00 or 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 to 45 hours per week, despite being paid for, at most, 40 hours per week;

e. Concurrently with the ABM project, Plaintiff Vieira worked for Defendants on a project in Wilmington Delaware from October 19, 2023 to November 9, 2023 from 7:00 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 45 hours per week, despite being paid for, at most, 40 hours per week;

f. Plaintiff Vieira worked for Defendants on the Reid Towers project in Brooklyn, NY, and continued to be on the ABM project, from in or about February 2025 to in or about August 2025, from 7:00 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 45 hours per week, despite being paid for, at most, 40 hours per week.

90. Plaintiff Andresson worked for Defendants as a Tile Setter from in or about July 2022 through in or about September 2026.

a. Plaintiff Andresson worked for Defendants on a project in Roselle, NJ, from in or about July 2022 to in or about September 2022, from 7:00 a.m. to 3:30 p.m., with a 30-minute meal break, for a total of 40 hours per week.

b. Plaintiff Andresson worked for Defendants on the Manhattanville project from in or about September 2022 through in or about December 2023 from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week.

c. Plaintiff Andresson worked for Defendants on the Harlem Grampion project from in or about January 2023 through in or about March 2023, from 7:30 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 42.5 hours per week, despite being paid for, at most, 40 hours per week.

d. Plaintiff Andresson worked for Defendants on the Washington Heights ABM project from in or about April 2023 through in or about March 2024, from 7:00 a.m. to between 4:30 and 5:00 p.m., with a 30-minute meal break, for a total of between 45 and 47.5 hours per week, despite being paid for, at most, 40 hours per week.

e. Plaintiff Andresson worked for Defendants on a project in Brooklyn from in or about April 2024 through in or about July 2025, from 7:00 a.m. to between 4:30

and 5:00 p.m., with a 30 minute meal break, for a total of between 45 and 47.5 hours per week, despite being paid for, at most, 40 hours per week.

f. Plaintiff Andresson worked for Defendants on a project in Staten Island from in or about July 2025 to in or about December 2025, from 7:30 a.m. to 4:00 p.m., with a 30-minute lunch break, for a total of 40 hours per week.

g. Plaintiff Andresson worked for Defendants on a project in Brooklyn from in or about February 2026 through in or about September 2026, from 7:00 a.m. to 4:30 p.m., with a 30-minute meal break, for a total of 45 hours per week, despite being paid for, at most, 40 hours per week.

91. Throughout 2022 and 2023, Defendants compensated Plaintiff Homem at the rate of $54.00 per hour for, at most, 40 hours of work per week notwithstanding that he regularly worked 42.5 to 50 hours per week.

92. Throughout 2024 and 2025, Defendants compensated Plaintiff Homem at the rate of either $54.75 or $55.05 for, at most, 40 hours of work per week notwithstanding that he regularly worked 42.5 to 50 hours per week.

93. Defendants did not compensate Plaintiff Homem for any work performed beyond the first 40 hours in the workweek at all, let alone at the required overtime premium rate of one-and-one-half times his regular rate of pay for each hour of work performed beyond 40 in the workweek.

94. Defendants compensated Plaintiff Homem at the rate of $54.00 per hour throughout 2022 and 2023 notwithstanding that the applicable prevailing wage rate for Plaintiff Homem's work as a carpenter in 2022 was $54.75 per hour through February 3, 2023, and thereafter

$55.05 per hour until December 5, 2024, and $57.05 per hour through July 31, 2025, and $59.05 per hour for the remainder of this employment.

95. Defendants did not provide Plaintiff Homem with the full amount of fringe benefits, wage supplements, or the cash equivalent thereof as required by the Public Works Contracts to which he was a third-party beneficiary.

96. Throughout 2022 and 2023, Defendants compensated Plaintiff Arriagada at the rate of $54.00 per hour for, at most, 40 hours of work per week notwithstanding that he regularly worked 42.5 to 50 hours per week.

97. Defendants did not compensate Plaintiff Arriagada for any work performed beyond the first 40 hours in the workweek at all, let alone at the required overtime premium rate of one-and-one-half times his regular rate of pay for each hour of work performed beyond 40 in the workweek.

98. Defendants compensated Plaintiff Arriagada at the rate of $54.00 per hour notwithstanding that the applicable prevailing wage rate for Plaintiff Arriagada's work as a carpenter in 2022 was $54.75 per hour through February 3, 2023, and thereafter $55.05 per hour for the remainder of his employment until May 21, 2023.

99. Defendants did not provide Plaintiff Arriagada with the full amount of fringe benefits, wage supplements, or the cash equivalent thereof as required by the Public Works Contracts to which he was a third-party beneficiary.

100. Throughout 2024 Defendants compensated Plaintiff Moreira at the rate of either $37.04 or $55.05 per hour for, at most, 40 hours of work per week notwithstanding that he regularly worked 42.5 hours per week.

101. Throughout 2025, Defendants compensated Plaintiff Moreira at the rate of either $37.04, $39.70, $40.22, or $55.05 per hour for, at most, 40 hours of work per week notwithstanding that he regularly worked 42.5 hours per week.

102. Throughout 2026, Defendants compensated Plaintiff Moreira at the rate of $40.22 per hour for, at most, 40 hours of work per week notwithstanding that he regularly worked 42.5 hours per week.

103. Defendants did not compensate Plaintiff Moreira for any work performed beyond the first 40 hours in the workweek at all, let alone at the required overtime premium rate of one-and-one-half times his regular rate of pay for each hour of work performed beyond 40 in the workweek.

104. Defendants compensated Plaintiff Moreira at the above rates notwithstanding that the applicable prevailing wage rate for Plaintiff Moreira's work as a carpenter was $55.05 per hour through December 5, 2024, $57.05 per hour through July 31, 2025, and $59.05 per hour thereafter for the remainder of his employment.

105. Defendants did not provide Plaintiff Moreira with the full amount of fringe benefits, wage supplements, or the cash equivalent thereof as required by the Public Works Contracts to which he was a third-party beneficiary.

106. Throughout 2022, Defendants compensated Plaintiff Mendes at the rate of $25.20 per hour for, at most, 40 hours of work per week notwithstanding that he regularly worked 42.5 to 47.5 hours per week.

107. Throughout 2023, 2024 and 2025, Defendants compensated Plaintiff Mendes at the rate of $37.44 per hour for, at most, 40 hours of work per week notwithstanding that he regularly worked 42.5 to 47.5 hours per week.

108. Defendants did not compensate Plaintiff Mendes for any work performed beyond the first 40 hours in the workweek at all, let alone at the required overtime premium rate of one-and-one-half times his regular rate of pay for each hour of work performed beyond 40 in the workweek.

109. Defendants compensated Plaintiff Mendes at the rate of $37.44 per hour throughout substantial portions of 2024 and 2025 notwithstanding that the applicable prevailing wage rate for Plaintiff Mendes's work as a Tier A demolition laborer was $39.70 per hour from March 8, 2024 through July 4, 2024, $42.23 per hour through August 22, 2024, $42.48 per hour through October 31, 2024 and $39.70 per hour thereafter for the remainder of his employment.

110. Defendants did not provide Plaintiff Mendes with the full amount of fringe benefits, wage supplements, or the cash equivalent thereof as required by the Public Works Contracts to which he was a third-party beneficiary.

111. Throughout 2022 and 2023, Defendants compensated Plaintiff Vieira at the rate of $37.44 per hour for, at most, 40 hours of work per week notwithstanding that he regularly worked 42.5 to 45 hours per week.

112. Throughout 2024 and 2025, Plaintiff Vieira performed the work of both Carpenter and Laborer, and Defendants compensated Plaintiff Vieira at the rate of either $37.44 or $55.05 per hour for, at most, 40 hours of work per week notwithstanding that he regularly worked 42.5 to 45 hours per week.

113. Defendants did not compensate Plaintiff Vieira for any work performed beyond the first 40 hours in the workweek at all, let alone at the required overtime premium rate of

one-and-one-half times his regular rate of pay for each hour of work performed beyond 40 in the workweek.

114. Defendants compensated Plaintiff Vieira at the rate of $37.44 per hour for his work as a Laborer notwithstanding that the applicable prevailing wage rate for Plaintiff Vieira's work as a Tier A demolition laborer was $39.70 per hour from March 8, 2024 through July 4, 2024, $42.23 per hour through August 22, 2024, $42.48 per hour through October 31, 2024, $39.70 per hour through July 24, 2025, and $40.22 per hour thereafter for the remainder of his employment.

115. Defendants compensated Plaintiff Vieira at the rate of $55.05 per hour for his work as a Carpenter notwithstanding that the applicable prevailing wage rate for Plaintiff Vieira's work as a Carpenter was $55.05 per hour through December 5, 2024, $57.05 per hour through July 31, 2025, and $59.05 per hour for the remainder of his employment.

116. Defendants did not provide Plaintiff Vieira with the full amount of fringe benefits, wage supplements, or the cash equivalent thereof as required by the Public Works Contracts to which he was a third-party beneficiary.

117. Throughout 2022 and 2023, Defendants compensated Plaintiff Andresson at the rate of either $33.73 or $46.20 per hour for, at most, 40 hours of work per week notwithstanding that he regularly worked 42.5 to 47.5 hours per week.

118. Throughout 2024, 2025, and 2026, Defendants compensated Plaintiff Andresson at the rate of either $48.44 or $49.59, and beginning March 23, 2026, $64.40 per hour, for, at most, 40 hours of work per week notwithstanding that he regularly worked 42.5 to 47.5 hours per week.

119. Defendants did not compensate Plaintiff Andresson for any work performed beyond the first 40 hours in the workweek at all, let alone at the required overtime premium rate of one-and-one-half times his regular rate of pay for each hour of work performed beyond 40 in the workweek.

120. Defendants compensated Plaintiff Andresson at the rate of either $46.20 or $48.44 per hour throughout portions of 2022, 2023, 2024, and 2025 notwithstanding that the applicable prevailing wage rate for Plaintiff Andresson's work as a Tile Setter was $61.84 per hour through June 29, 2023, $63.04 per hour through January 2, 2025, $63.98 per hour through May 25, 2026, and $64.40 per hour thereafter for the remainder of his employment.

121. Defendants did not provide Plaintiff Andresson with the full amount of fringe benefits, wage supplements, or the cash equivalent thereof as required by the Public Works Contracts to which he was a third-party beneficiary.

122. Based upon their observations and conversations with their coworkers, the Collective Action Members and Class Members worked the same or similar hours as Plaintiffs and were paid in the same or similar manner as Plaintiffs.

**Misclassification of Employees**

123. Throughout the relevant period, Defendants also misclassified Plaintiffs and the Collective Action Members and the Class as a lower trade for payroll purposes so as to reduce their required minimum hourly rate.

124. Specifically, Plaintiffs, who were hired as carpenters, and generally performed carpentry work throughout their employment, were often paid approximately 10 hours each week at the lower Laborer rate instead.

125. At one of the projects in Brooklyn, from February 2024 through March 2024, Defendants required Plaintiff Homem to sign in as a "Supervisor" for purposes of fraudulently reporting that a supervisor was on site at the project, despite only paying Plaintiff Homem at his normal hourly rate.

126. Based upon their observations and conversations with their coworkers, the Collective Action Members and Class Members were similarly classified as lower trades than what they were actually working so that Defendants could reduce their weekly wages below what was required by the Public Works Contracts.

**Failure to Provide Accurate Pay Notices**

127. Throughout their employment with Defendants, Plaintiffs and the Class Members did not receive any notices of pay rate or pay day from Defendants as required by the NYLL.

128. As a result of Defendants' failure to record and compensate Plaintiffs and the Class Members for all hours worked each week, the paystubs accompanying the employees' wage payments were not accurate because they did not include all hours worked during the pay period, as required by the NYLL.

129. Defendants' failure to furnish Plaintiffs and the Class Members with accurate wage notices and statements caused Plaintiffs and the Class Members concrete harm apart from the statutory violations themselves.

130. Because Defendants did not furnish Plaintiffs and the Class Members with accurate wage statements reflecting actual hours worked, regular and overtime rates, gross wages, deductions, net wages, and supplemental benefits, and instead required Plaintiffs and the Class Members to fill out and/or sign false time sheets reflecting only (at most) 40 hours

per week, Plaintiffs and the Class Members could not determine from their wage records the precise amount of hours Defendants omitted or the precise amount of wages unlawfully withheld.

131. Defendants' failure to furnish accurate wages statements concealed the extent of the underpayments, delayed Plaintiffs' and the Class Members' ability to detect and contest Defendants' unlawful pay practices, delayed Plaintiffs' and the Class Members' recovery of wages owed to them, and caused Plaintiffs and the Class Members concrete monetary harm, including being deprived of wages for longer than they otherwise would have been and difficulty in timely paying ordinary living expenses.

132. Defendants' violations in this regard were willful, as Defendant Macarena admitted on at least one occasion that "We don't pay based on application[.] we pay based on paper," despite knowing that the SmartBarrell application contained the actual working time of Plaintiffs and the Class Members and knowing that the "paper" hours were not accurate at all based upon her daily instructions to the Plaintiffs and the Class Members.

**<u>Defendants' Willful Violations of the Law</u>**

133. Defendants did not merely commit an isolated payroll error. Rather, they systematically and intentionally paid Plaintiffs and the Class Members a weekly amount regardless of hours worked, required them to fill out and/or sign inaccurate time sheets reflecting (at most) 40 hours of work per week, failed to provide accurate wages notices and statements, and continued these practices despite knowing that Plaintiffs and the Class Members were not being paid for all hours worked.

134. Defendants knew that they had instructed their employees to begin working prior to the beginning of their shifts in order to attend meetings, receive instruction from

supervisors, and prepare their gear, yet deliberately chose to not pay their employees for that time.

135. Defendants knew that their employees accurately recorded their working time in the SmartBarrell application, yet deliberately chose to pay their employees in accordance with the false time sheets that they required their employees to sign.

136. Defendants knew that employees did not stop working at 4:30 p.m. and continued working upwards of 30 minutes or more past that time in order to complete their tasks for the day, yet deliberately chose to not pay their employees for that time.

137. Defendants knew that their employees were working in specific trades yet deliberately misclassified them to a lesser-paying trade for a certain amount of hours each week in order to reduce their payroll and inflate their own profits.

138. Defendants knew that their employees were entitled to be paid supplemental benefits at a certain rate per hour yet deliberately chose to not pay the full amount of supplemental benefits for each hour worked.

139. As evidenced by the group chat messages referenced herein, Defendants knowingly and willfully operated their business with a policy of failing to pay overtime wages to Plaintiffs, the Collective Action Members, and the Class Members for all hours worked in excess of 40 hours in violation of the FLSA and NYLL.

140. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiffs and the Class Members all due prevailing wages in violation of the NYLL or as third-party beneficiaries of the Public Works Contracts.

141. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiffs and the Class Members all due fringe benefits or the cash equivalent

thereof in violation of the NYLL or as third-party beneficiaries of the Public Works Contracts.

142. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiffs and the Class Members in violation of the NYLL.

143. Defendants knowingly and willfully operated their business with a policy of not properly recording their employees working time and not providing proper wage statements to Plaintiffs and the Class Members in violation of the NYLL.

**FIRST CLAIM FOR RELIEF**
**FLSA - UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

144. The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants, as employers, and protect Plaintiffs and the Collective Action Members, as employees.

145. Defendants violated the FLSA overtime rights of Plaintiffs and the Collective Action Members by failing to pay overtime premiums of one and one-half (1.5) times the employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

146. By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay (and more specifically the proper applicable regular rate of pay for the work being performed notwithstanding Defendants' misclassification of Plaintiffs' and the Collective Action Members' job titles) for all work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

147. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) such that a three-year statute of limitations applies to the claims of the Plaintiffs and the Collective Action Members.

148. Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, liquidated damages, pre-judgment interest, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

149. Records, if any, concerning the number of hours worked by Plaintiffs and the Collective Action Members and the actual compensation paid to Plaintiffs and the Collective Action Members are, or should be, in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amounts due to Plaintiffs and the Collective Action Members.

**SECOND CLAIM FOR RELIEF**
**NYLL - UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

150. The minimum wage and overtime provisions set forth in the NYLL, §§ 650 *et seq*., and the supporting New York State Department of Labor regulations, apply to Defendants, as employers, and protect Plaintiffs and the Class Members, as employees.

151. Defendants violated the NYLL overtime rights of Plaintiffs and the Class Members by failing to pay overtime premiums of one and one-half (1.5) times the employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

152. By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay (and more specifically the proper applicable regular rate of pay for the work being performed notwithstanding Defendants' misclassification of Plaintiffs' and the Class Members' job titles) for all work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the NYLL, §§ 650 *et seq.*, including its supporting regulations, 12 N.Y. C.R.R. § 142-2.2.

153. The foregoing conduct, as alleged, constitutes a willful violation of the NYLL.

154. Defendants' failure to pay overtime caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime premium compensation, liquidated damages, pre-judgment interest, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) and 198(1-a).

155. Records, if any, concerning the number of hours worked by Plaintiffs and the Class Members and the actual compensation paid to Plaintiffs and the Class Members are, or should be, in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amounts due to Plaintiffs and the Class Members.

**THIRD CLAIM FOR RELIEF**
**<u>NYLL - FAILURE TO PAY WAGES</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

156. The minimum wage and overtime provisions set forth in the NYLL, §§ 190 *et seq.*, and the supporting New York State Department of Labor regulations, apply to Defendants, as employers, and protect Plaintiffs and the Class Members, as employees.

157. Defendants violated the rights of Plaintiff and the Class Members even in weeks where no overtime work was performed by failing to properly pay them for all working time as a result of the time-shaving practices alleged herein.

158. Defendants also violated the rights of Plaintiffs and the Class Members by improperly classifying them in job titles or trades which were required to be paid an hourly prevailing wage at a rate less than what was required to by paid to them at their actual job title or trade in an effort to reduce their weekly payroll.

159. By failing to pay Plaintiffs and the Class Members at the required hourly rate for the work they actually performed, for all hours worked, Defendants have violated and continue to violate NYLL §§ 191 and 193.

160. The foregoing conduct, as alleged, constitutes a willful violation of the NYLL.

161. Defendants' failure to pay at the proper rate of pay caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid compensation, liquidated damages, pre-judgment interest, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL § 198(1-a).

162. Records, if any, concerning the number of hours worked by Plaintiffs and the Class Members and the actual compensation paid to Plaintiffs and the Class Members are, or should be, in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amounts due to Plaintiffs and the Class Members.

**FOURTH CLAIM FOR RELIEF**
**NYLL - WAGE NOTICE VIOLATIONS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

163. The minimum wage payment provisions set forth in the NYLL, §§ 190 *et seq.*, and the supporting New York State Department of Labor regulations, apply to Defendants, as employers, and protect Plaintiffs and the Class Members, as employees.

164. Defendants have failed to supply Plaintiffs and the Class Members with proper notice of their wages at or near their time of hire as required by NYLL § 195(1).

165. Due to Defendants' violation of the NYLL in this regard, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each work day that the violation continued to occur, or a total of five thousand dollars ($5,000) per employee, whichever is less, as provided for by NYLL § 198(1-b), together with reasonable attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**
**NYLL - WAGE STATEMENT VIOLATIONS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

166. The minimum wage payment provisions set forth in the NYLL, §§ 190 *et seq.*, and the supporting New York State Department of Labor regulations, apply to Defendants, as employers, and protect Plaintiffs and the Class Members, as employees.

167. Defendants have failed to supply Plaintiffs and the Class Members with a proper wage statement with each payment of wages as required by NYLL § 195(3) since the paystubs Defendants provided did not include all hours that Plaintiffs and the Class Members worked each pay period.

168. Due to Defendants' violation of the NYLL in this regard, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250) per

employee for each work day that the violation continued to occur, or a total of five thousand dollars ($5,000) per employee, whichever is less, as provided for by NYLL § 198(1-d), together with reasonable attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(Brought on Behalf of Plaintiffs and the Class Members)**

169. Upon information and belief, the Public Works Contracts entered into by Defendants contained schedules of the prevailing rate of wages and supplemental benefits or reference to the NYLL or Davis-Bacon Act provisions governing payment of prevailing wages to be paid to Plaintiffs and the Class Members.

170. Those prevailing rates of wages and supplemental benefits were made part of the Public Works Contracts for the benefit of the Plaintiffs and the Class Members.

171. In the event that the contracts or agreements entered into by Defendants failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Defendants to pay Plaintiffs and the Class Members prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

172. Further, NYLL § 220 specifically required that language mandating the payment of prevailing wages be included in all contracts and sub-contracts.

173. Defendants' failure to pay Plaintiff and the Class Members at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed pursuant to the Public Works Contracts constituted a material breach of the contract entered into directly or indirectly between Defendants and certain public entities.

174. As a result of Defendants' failure to pay Plaintiffs and the Class Members at prevailing wage rates, Plaintiffs and the Class Members, as third-party beneficiaries of the Public Works Contracts, are entitled to relief from Defendants including the recovery of their unpaid prevailing wages, unpaid prevailing daily/weekly overtime wages, unpaid supplemental benefits, liquidated damages, pre-judgment interest, attorneys' fees, and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

A. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual consents to join pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

B. Certification of this action as a class action pursuant to Fed.R.Civ.P. 23(b)(2) and (3) on behalf of the Class Members, appointing Plaintiffs and their counsel to represent the Class Members and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violations of the NYLL and New York common law;

C. An order tolling the statute of limitations for all absentee Collective Action Members and Class Members;

D. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, and New York common law;

E. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all other persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

F. An award of compensatory and liquidated damages as a result of Defendants' failure to pay overtime compensation to Plaintiffs, the Collective Action Members, and the Class Members pursuant to the FLSA and NYLL and supporting regulations;

G. An award of compensatory and liquidated damages as a result of Defendants' failure to pay all wages to which Plaintiffs and the Class Members are entitled pursuant to the NYLL and supporting regulations;

H. An award of statutory damages to Plaintiffs and the Class Members as a result of Defendants' failure to follow the requirements of NYLL § 195;

I. An award of monetary damages for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiffs and the Class Members;

J. An award of prejudgment and post-judgment interest;

K. An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees; and,

L. Such other and further relief as this Court deems just and proper.

Dated: Huntington Station, New York
November 6, 2026

Respectfully submitted,

**ZANDRA LAW PLLC**

By: ____________________________

Eric S. Tilton (ET 9547), *of counsel*
1100 New York Avenue, Ste. A
Huntington Station, NY 11746
(631) 810-1180
eric@zandralaw.com

*Attorneys for Plaintiffs,*
*the FLSA Collective and the Class*

**CONSENT TO JOIN COLLECTIVE ACTION**
**Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)**

***Homem Silva et al. v. Pro Property Reno Inc et al.*, No. __ Civ. ____ (XXX)(XXX)**

1. I am over the age of eighteen and competent to give my consent in this matter.

2. I consent to be a party plaintiff in a lawsuit against Pro Property Reno Inc. and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

3. By signing and returning this consent form, I designate Zandra Law, PLLC ("Plaintiff's counsel") to represent me and make decisions on my behalf concerning the litigation, any settlement, and any future litigation. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

4. I also designate the named plaintiffs, to the fullest extent possible under law, as my agents to make decisions on my behalf concerning this litigation and any settlement.

5. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment on a pro rata basis among all plaintiffs.

6. I understand that Plaintiffs' counsel will petition the Court for attorneys' fees from any settlement or judgment for the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates for each attorney that represents me by the number of hours expended on the lawsuit; or, (2) one-third (⅓) of the gross settlement or judgment amount, net of any expenses reimbursed to Plaintiff's counsel.

7. I understand that I amy withdraw this consent at any time by notifying the above-listed attorneys in writing.

| | |
|---|---|
| 11/ 03/ 2026 | |
| Dated | Signature |
| Ryan Homem Silva | 1339 Stuyvesant ave - Union - NJ |
| Full Legal Name (print) | Address |
| Ryanhomem@icloud.com | 908-481-6778 |
| Email Address | Telephone Number |

**Return this form by mail, email, or fax to:**
**Zandra Law, PLLC, 1100 New York Avenue, Suite A, Huntington Station, NY 11746**
**eric@zandralaw.com; zandra@zandralaw.com FAX: (631) 810-1181**

**CONSENT TO JOIN COLLECTIVE ACTION**
**Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)**

***Silva Homem et al. v. Pro Property Reno Inc et al.*, No. __ Civ. ____ (XXX)(XXX)**

1. I am over the age of eighteen and competent to give my consent in this matter.

2. I consent to be a party plaintiff in a lawsuit against Pro Property Reno Inc. and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

3. By signing and returning this consent form, I designate Zandra Law, PLLC ("Plaintiff's counsel") to represent me and make decisions on my behalf concerning the litigation, any settlement, and any future litigation. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

4. I also designate the named plaintiffs, to the fullest extent possible under law, as my agents to make decisions on my behalf concerning this litigation and any settlement.

5. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment on a pro rata basis among all plaintiffs.

6. I understand that Plaintiffs' counsel will petition the Court for attorneys' fees from any settlement or judgment for the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates for each attorney that represents me by the number of hours expended on the lawsuit; or, (2) one-third (⅓) of the gross settlement or judgment amount, net of any expenses reimbursed to Plaintiff's counsel.

7. I understand that I amy withdraw this consent at any time by notifying the above-listed attorneys in writing.

| | |
|---|---|
| 11/05/26<br>Dated | [signature]<br>Signature |
| Jaythlo Arriagada<br>Full Legal Name (print) | 375 W. 207st NY 10034<br>Address |
| Jaythlo1@gmail<br>Email Address | 347 848 9865<br>Telephone Number |

**Return this form by mail, email, or fax to:**
**Zandra Law, PLLC, 1100 New York Avenue, Suite A, Huntington Station, NY 11746**
**eric@zandralaw.com; zandra@zandralaw.com FAX: (631) 810-1181**

Scanned with CamScanner

**CONSENT TO JOIN COLLECTIVE ACTION**
**Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)**

***Homem Silva et al. v. Pro Property Reno Inc et al.*, No. __ Civ. ____ (XXX)(XXX)**

1. I am over the age of eighteen and competent to give my consent in this matter.

2. I consent to be a party plaintiff in a lawsuit against Pro Property Reno Inc. and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

3. By signing and returning this consent form, I designate Zandra Law, PLLC ("Plaintiff's counsel") to represent me and make decisions on my behalf concerning the litigation, any settlement, and any future litigation. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

4. I also designate the named plaintiffs, to the fullest extent possible under law, as my agents to make decisions on my behalf concerning this litigation and any settlement.

5. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment on a pro rata basis among all plaintiffs.

6. I understand that Plaintiffs' counsel will petition the Court for attorneys' fees from any settlement or judgment for the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates for each attorney that represents me by the number of hours expended on the lawsuit; or, (2) one-third (⅓) of the gross settlement or judgment amount, net of any expenses reimbursed to Plaintiff's counsel.

7. I understand that I amy withdraw this consent at any time by notifying the above-listed attorneys in writing.

| | |
|---|---|
| 11/05/2026 | [signature] |
| Dated | Signature |
| Niwton Cesar Moreira Junior | 1 Webster Ave, Kearny, New Jersey, 07032 |
| Full Legal Name (print) | Address |
| Niwtonjr23@hotmail.com | (914)325-7852 |
| Email Address | Telephone Number |

**Return this form by mail, email, or fax to:**
**Zandra Law, PLLC, 1100 New York Avenue, Suite A, Huntington Station, NY 11746**
**eric@zandralaw.com; zandra@zandralaw.com FAX: (631) 810-1181**

**CONSENT TO JOIN COLLECTIVE ACTION**
**Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)**

***Homem Silva et al. v. Pro Property Reno Inc et al.*, No. __ Civ. ____ (XXX)(XXX)**

1. I am over the age of eighteen and competent to give my consent in this matter.

2. I consent to be a party plaintiff in a lawsuit against Pro Property Reno Inc. and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

3. By signing and returning this consent form, I designate Zandra Law, PLLC ("Plaintiff's counsel") to represent me and make decisions on my behalf concerning the litigation, any settlement, and any future litigation. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

4. I also designate the named plaintiffs, to the fullest extent possible under law, as my agents to make decisions on my behalf concerning this litigation and any settlement.

5. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment on a pro rata basis among all plaintiffs.

6. I understand that Plaintiffs' counsel will petition the Court for attorneys' fees from any settlement or judgment for the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates for each attorney that represents me by the number of hours expended on the lawsuit; or, (2) one-third (⅓) of the gross settlement or judgment amount, net of any expenses reimbursed to Plaintiff's counsel.

7. I understand that I amy withdraw this consent at any time by notifying the above-listed attorneys in writing.

| | |
|---|---|
| 11/05/2026 | |
| Dated | Signature |
| Gabriel Emidio Mendes | 228 e firts ave Roselle, New Jersey |
| Full Legal Name (print) | Address |
| Gabrielemidiomendes250@hotmail.com | 973-745-8558 |
| Email Address | Telephone Number |

**Return this form by mail, email, or fax to:**
**Zandra Law, PLLC, 1100 New York Avenue, Suite A, Huntington Station, NY 11746**
**eric@zandralaw.com; zandra@zandralaw.com FAX: (631) 810-1181**

**CONSENT TO JOIN COLLECTIVE ACTION**
**Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)**

***Homem Silva et al. v. Pro Property Reno Inc et al.*, No. __ Civ. ____ (XXX)(XXX)**

1. I am over the age of eighteen and competent to give my consent in this matter.

2. I consent to be a party plaintiff in a lawsuit against Pro Property Reno Inc. and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

3. By signing and returning this consent form, I designate Zandra Law, PLLC ("Plaintiff's counsel") to represent me and make decisions on my behalf concerning the litigation, any settlement, and any future litigation. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

4. I also designate the named plaintiffs, to the fullest extent possible under law, as my agents to make decisions on my behalf concerning this litigation and any settlement.

5. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment on a pro rata basis among all plaintiffs.

6. I understand that Plaintiffs' counsel will petition the Court for attorneys' fees from any settlement or judgment for the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates for each attorney that represents me by the number of hours expended on the lawsuit; or, (2) one-third (⅓) of the gross settlement or judgment amount, net of any expenses reimbursed to Plaintiff's counsel.

7. I understand that I amy withdraw this consent at any time by notifying the above-listed attorneys in writing.

November 5, 2026
Dated

Signature

Luciano B. Vieira Jr.
Full Legal Name (print)

118 Port Ave #2, Elizabeth, NJ 07206
Address

lucianovieirausa35@outlook.com
Email Address

973-905-2395
Telephone Number

**Return this form by mail, email, or fax to:**
**Zandra Law, PLLC, 1100 New York Avenue, Suite A, Huntington Station, NY 11746**
**eric@zandralaw.com; zandra@zandralaw.com FAX: (631) 810-1181**

**CONSENT TO JOIN COLLECTIVE ACTION**
**Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)**

***Homem Silva et al. v. Pro Property Reno Inc et al.*, No. __ Civ. ____ (XXX)(XXX)**

1. I am over the age of eighteen and competent to give my consent in this matter.

2. I consent to be a party plaintiff in a lawsuit against Pro Property Reno Inc. and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

3. By signing and returning this consent form, I designate Zandra Law, PLLC ("Plaintiff's counsel") to represent me and make decisions on my behalf concerning the litigation, any settlement, and any future litigation. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

4. I also designate the named plaintiffs, to the fullest extent possible under law, as my agents to make decisions on my behalf concerning this litigation and any settlement.

5. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment on a pro rata basis among all plaintiffs.

6. I understand that Plaintiffs' counsel will petition the Court for attorneys' fees from any settlement or judgment for the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates for each attorney that represents me by the number of hours expended on the lawsuit; or, (2) one-third (⅓) of the gross settlement or judgment amount, net of any expenses reimbursed to Plaintiff's counsel.

7. I understand that I amy withdraw this consent at any time by notifying the above-listed attorneys in writing.

11/03/2026
Dated

Antonio Andresson
Signature

ANTONIO DOAMARALANDRESSON
Full Legal Name (print)

310 KENNEDY DR LINDEN, NJ
Address

CEZARETTIBRUNA@GMAIL.COM
Email Address

9739417470
Telephone Number

**Return this form by mail, email, or fax to:**
**Zandra Law, PLLC, 1100 New York Avenue, Suite A, Huntington Station, NY 11746**
**eric@zandralaw.com; zandra@zandralaw.com FAX: (631) 810-1181**